UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNANAS JOHNSON, JENNIFER JOHNSON, | CASE NO. C20-5581 MJP |
| Plaintiffs, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

This matter came before the Court for trial on December 6, 7, and 8, 2021, on Plaintiffs'

Federal Tort Claim.  Plaintiffs were represented by Ray W. Kahler of Stritmatter Kessler Koehler

Moore and Benjamin R. Winkelman of Parker, Winkelman & Parker.  Defendant was

represented by Matt Waldrop of the United States Attorney's Office.  Having reviewed the trial

briefs of the parties, the exhibits admitted into evidence, and heard the testimony at trial, the

Court makes the following Findings of Fact and Conclusions of Law.

# I.   FINDINGS OF FACT

**A.   Parties**

1.      Johnanas "John" and Jennifer Johnson are residents of Washington.

2.      The United States of America is the Defendant, and the Postal Service worker involved in the collision, Michael Murray, was acting as an employee of the United States within the scope of his employment.

**B.   Facts Regarding the Collision**

1.      A collision occurred on Boone Street in Aberdeen, Washington on November 10, 2018 at approximately 11:00 a.m., involving a Postal Service truck driven by Michael Murray and a motorcycle driven by John Johnson.

2.      Boone Street at this location has two southbound lanes, two northbound lanes, and a center turn lane.

3.      The speed limit on Boone Street is 35 mph.

4.      The USPS employee was attempting to turn left onto Boone Street (intending to head south on Boone Street) from a driveway/parking lot when he collided with Mr. Johnson's 2016 Kawasaki motorcycle.

5.      The collision and a portion of the events leading up to the collision were captured on a security camera at a 7-Eleven store.

6.      The security camera footage indicates that the Johnson motorcycle was northbound on Boone Street when the Postal Service truck accelerated from the driveway into the Johnson motorcycle's path of travel.

7.      Mr. Johnson had turned left from MacFarlane Street onto Boone Street, and was traveling northbound on Boone Street when his motorcycle collided with the postal truck.

8.      The USPS employee accelerated across the northbound travel lanes on Boone Street directly into the path of the Johnson motorcycle, which was traveling northbound on Boone Street.

9.      Mr. Johnson initiated a leftward swerve just before impact but was unable to avoid a collision with the postal truck due to insufficient perception-reaction time after the postal vehicle entered the northbound lanes of Boone Street.

10.     The point of impact was near the yellow painted line separating the inside northbound lane from the center turn lane.

11.     The right front of the Johnson motorcycle collided with the right front of the postal vehicle.

12.     The impact caused Mr. Johnson to be ejected from his motorcycle.

13.     Mr. Johnson landed on the asphalt pavement after being thrown from his motorcycle.

14.     The Johnson motorcycle was equipped with a headlight that would have been illuminated at the time of the incident.

15.     The Aberdeen Police Department responded to the collision and photographed the scene.

16.     The motorcycle slid on its left side on the asphalt roadway after the collision, resulting in damage to the left side of the motorcycle.

17.     A review of the incident by the Postal Service found that Postal Service driver Michael Murray was at fault for the collision for failing to see the Johnson motorcycle and failing to yield the right of way.

18.     The Postal Service issued a letter of warning to Michael Murray after the collision.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

19.     Expert testimony from Mark Erickson, P.E. established that the motorcycle executed its turn and occupied the center turn lane before the postal truck entered the lane.

**C.     Medical Treatment**

1.     Mr. Johnson had a partial amputation of his right middle finger and a laceration to the tip of his right index finger with nailbed involvement.

2.     Mr. Johnson also had injuries to his right knee and his tailbone/coccyx.

3.     After being treated in the Emergency Room on the day of the collision, Mr. Johnson returned to the Emergency Room for further treatment for the injuries to the fingers on his right hand on November 13, 2018 and November 16, 2018.

4.     On November 16, 2018, Mr. Johnson had a surgical procedure performed by orthopedic surgeon Erin Kawasaki, D.O. for amputation of bone that was protruding from the right middle finger and closure of the skin over the wound.

5.     Mr. Johnson had follow-up orthopedic care for his right index and middle finger injuries from Dr. Kawasaki and Greg May, M.D., who assumed care for Mr. Johnson after Dr. Kawasaki left the practice and moved away from Grays Harbor County.

6.     Mr. Johnson had occupational therapy for his right index and middle finger injuries from Jarod Mann, O.T.R., C.H.T., of Coastal Hand Therapy.

7.     Mr. Johnson had physical therapy for his wrists and knees from Harbor Physical Therapy.

8.     Both of Mr. Johnson's thumbs were injured, resulting in both of his hands being in braces to immobilize his thumbs for several weeks after the injury making him dependent upon his family for daily life skills.

**D.      Plaintiff's Motorcycle**

1.      Mr. Johnson's motorcycle sustained significant damage as a result of the collision and was a total loss.  The motorcycle had been purchased new in May 2017 for $9,883.99 including taxes and fees. Only the purchase price was offered as a value at trial. Therefore the fair value for the total loss of the motorcycle is $9,883.99.

**E.      Medical Expenses**

1.      Mr. Johnson's medical bills are: $38,073.92.  The reasonableness and necessity of the medical bills are not disputed.

**F.      Wage Loss**

1.      Mr. Johnson was working two jobs at the time of the collision.  In the mornings, he worked five hours in the kitchen at Hoquiam Middle School.  In the afternoons, he worked on average 3.75 hours a day at a construction job for Total Building Concepts.  During school holidays/vacations, he normally worked 8 hours at Total Building Concepts.

2.      Mr. Johnson was earning approximately $14 per hour at Hoquiam Middle School and $16 per hour at Total Building Concepts.

3.      Mr. Johnson was unable to work for approximately three months after the collision.

4.      Mr. Johnson returned to working at the Hoquiam Middle School cafeteria on February 12, 2019.

5.      Mr. Johnson attempted to return to working at Total Building Concepts part-time on February 12, 2019 but continued to miss work at Total Building Concepts on some dates through May 2019 due to his injuries and medical appointments for treatment of his injuries caused by the collision.

6.      Mr. Johnson's total wage loss proximately caused by the collision is $9,605.

**G.      Injuries and Noneconomic Damages to Plaintiff John Johnson**

1.      Mr. Johnson was thrown from his motorcycle as a result of the collision and landed on pavement.

2.      Mr. Johnson suffered numerous injuries as a result of the collision, including to both heels, his right knee, his torso, his left buttock, his low back and tailbone area, and his right index finger and right middle finger.

3.      Mr. Johnson had a laceration to his right index finger that involved the nail bed. The laceration was closed with sutures.  Mr. Johnson had a nerve block injection in his right index finger so that the laceration could be sutured.  Mr. Johnson testified that the nerve block injection was painful.

4.      Approximately 1.9 cm of the tip of Mr. Johnson's right middle finger was traumatically amputated as a result of the collision.  Mr. Johnson had a nerve block injection in his right middle finger so that the right middle finger injury could be treated in the Emergency Room.  Mr. Johnson testified that the nerve block injection was painful.

5.      On November 16, 2018, Mr. Johnson returned to the Emergency Room due to bone sticking out of his right middle finger open wound.  An orthopedic surgeon had to cut the bone back so that skin could be pulled together over the wound to close it.  Mr. Johnson had a nerve block injection in his right middle finger so that this procedure could be performed.  Mr. Johnson testified that the nerve block injection was painful.

6.      Mr. Johnson's right index and middle finger wounds required regular dressing changes.  Mr. Johnson testified that the dressing changes were painful.  Family members had to assist with the dressing changes.  Mrs. Johnson participated in these dressing changes.

7.    All of the fingers on Mr. Johnson's right had were swollen as a result of the collision.

8.    Mr. Johnson had painful sprains of both thumbs that required immobilizing his thumbs in braces.  Initially, he had braces that went up to his elbows.  Later, he had smaller braces that stopped at the wrist.

9.    Mr. Johnson testified that it hurts to cut the fingernails on his index and middle fingers – clipping the nails sends pain down his fingers.  The fingernail on his middle finger curls around and grow into the finger if he does not keep it clipped short. His middle finger is visibly shorter, and Mr. Johnson believes it is "ugly" and he does not like to look at it or gesture with it. His work on cars is slowed from his prior performance.

10.    Mr. Johnson continues to have pain in his right index and middle fingers on a daily basis, particularly when he uses them for activities such as working on cars or using hand tools.

11.    Mr. Johnson had pain in his right knee after the collision.  Activities such as kneeling and squatting aggravated his knee pain.  His right knee symptoms improved after a corticosteroid injection in April 2019.

12.    Mr. Johnson was a very active person before the collision.  He worked two part-time jobs, one of which was very physical.  He coached soccer and worked out.  He was in excellent physical condition.  He worked on cars as a hobby and enjoyed riding his motorcycle, and enjoyed a new hobby of mountain climbing.  He became frustrated, irritable, and depressed due to being immobilized, unable to work, and unable to do his normal activities as a result of the injuries caused by the collision.

13.    Mr. Johnson also had significant anxiety.  He worried about finances and how he and his wife would pay bills with him not working.

14.     For about three months after the collision, Mr. Johnson was very limited in what he could do.  Both of his hands were immobilized in braces for months.  Both thumbs were immobilized, and his right index finger and middle finger were immobilized. Rather than being active and helping others, he was completely dependent on his family.

15.     Mr. Johnson was unable to use his right hand for approximately three months after the collision.  He is right-hand dominant.  He could not hold a pen to write.  He could not tie his shoes or drive a car.  He could not shave.  He could not prepare food.  He had to eat food using four fingers on his left hand, which was difficult.  He could not use a computer keyboard.

16.     Mr. Johnson required assistance from family members for a wide variety of daily activities, such as preparing food and getting dressed and undressed.  His mother helped him on a daily basis for several hours a day while his wife was at work and his children were at school, including driving  him to appointments.

17.     It was very difficult to bend his fingers on his right hand for several months.  He had to do occupational therapy to work on range of motion in his fingers, which was often painful.

18.     Mr. Johnson had difficulty sleeping for months after the crash.  He woke up with nightmares.  This also disturbed Mrs. Johnson's sleep.

19.     Mr. Johnson has a permanent loss of range of motion in his right index and middle fingers as a result of the collision.

20.     Mr. Johnson has a permanent loss of grip strength in his right index and middle fingers as a result of the collision.

21.     Mr. Johnson has a permanent loss of pinch strength in his right index and middle fingers as a result of the collision.

22.     Mr. Johnson has had to change the way he grips objects, from a tooth brush to cooking utensils, to construction and car maintenance tools.  He has to rely on his right ring and pinky fingers to grip tools because his index and middle fingers no longer have the range of motion to grip securely.  He cannot grip a hammer properly.  He has to work harder to do any activity that requires gripping with his right hand.

23.     Mr. Johnson has difficulty with fine motor skills with his right index and middle finger, such as  gripping small diameter objects like a straw to remove the paper cover, and twisting lids on jars.

24.     The fine motor skills that are difficult under normal conditions are even harder in cold weather, which causes his fingers to stiffen.  Tying shoes or manipulating a zipper or equipment in cold weather is difficult.

25.     Mr. Johnson no longer uses his right index and middle fingers for typing as a result of the injuries to those fingers.  He has difficulty with typing on a computer keyboard as a result of the injuries to his right hand.

26.     Mr. Johnson's work options will be limited in the future as a result of the injuries to his right hand.

27.     Mr. Johnson's right middle finger is permanently shortened, and the fingernail is deformed.

28.     Mr. Johnson enjoyed the physical challenge and feeling of accomplishment involved in mountain climbing.  He has not been mountain climbing since the collision.  He is concerned about his ability to grip an ice axe and perform other tasks involved in mountain climbing under cold weather conditions, which cause his right index and middle fingers to stiffen and become more difficult to use.

29.     Mr. Johnson enjoyed riding motorcycles before the collision.  It was a recreational activity that he did with his best friend, David Jorgensen, as well as an activity that he did by himself.  He had just purchased a new motorcycle in 2018 so that he could take more frequent motorcycle rides.  He enjoyed being able to focus on riding and being able to forget about other worries in life.  The right index and middle fingers are used to operate the front brakes on a motorcycle.  Mr. Johnson has been on a couple of short motorcycle rides since the collision.  He no longer enjoys riding.  He had significant anxiety.

30.     Mr. Johnson enjoys working on cars.  Working on cars was a hobby for him, as well as a way to earn additional income and maintain his family's vehicles.  He was unable to work on cars for several months after the collision due to his hand injuries.  While he has resumed working on cars, he has difficulty due to the limitations in range of motion and grip and pinch strength in his right index and middle fingers and is slower now, which causes frustration.  He has had to change how he holds tools and does other tasks that involve his right hand.

31.     Mr. Johnson works and earns his living doing physical work. The loss of his dexterity will limit his work possibilities for the rest of his life.  He is also a man who was proud of his physical abilities and his ability to motivate and demonstrate these skills to his children.  He feels his imperfect physical appearance and limitations makes him feel less competent.  He was a man who did not feel afraid participating in his hobbies and now he feels scared and has lost confidence.

**H.     Plaintiff Jennifer Johnson's Damages**

1.     Mr. Johnson was significantly disabled for about three months as a result of having limited use of his hands.  He had unexpected medical bills and was unable to work for

approximately three months, which caused financial stress, which affected his wife, Jennifer Johnson.

2.      Jennifer Johnson had to take on more family responsibilities, as well as assisting her husband, in addition to working full time.  Mr. Johnson was not able to help with household responsibilities and vehicle maintenance for the family as he normally did.

3.      Jennifer Johnson's marital relationship with her husband suffered as a result of his injuries. She has become increasingly unhappy with her husband's temperament and anxious over his depressive presentation.

4.      The Johnsons were not able to do their normal activities as a family for the first few months after the collision because Mr. Johnson was injured and limited in what he could do.

## II.      CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1346(b).  Venue is proper under 28 U.S.C. § 1402(b).

**B.      Standard of Proof**

1.      Plaintiffs must prove their claims by a preponderance of the evidence. "The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true." Mohr v. Grant, 153 Wn.2d 812, 822 (2005).

**C.      Federal Tort Claims Act**

1.      Pursuant to the Federal Tort Claims Act, the United States is liable for a "negligent or wrongful acts or omissions of any employee of the Government while acting within the scope of his or her office or employment, under circumstances where the United States, if a

1  private person, would be liable to the claimant in accordance with the law of the place where the

2  act or omission occurred."  28 U.S.C. § 1346(b)(1).

3      2.      Plaintiffs have satisfied the administrative requirements under the FTCA, 28

4  U.S.C. § 2401.

5  **D.    Negligence**

6      1.      Because the subject collision occurred in Aberdeen, Washington, the substantive

7  law of Washington State applies.  See Conrad v. United States, 447 F.3d 760, 767 (9th Cir.

8  2006).

9      2.      "In order to prove actionable negligence, a plaintiff must establish the existence

10  of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and

11  the resulting injury."  Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 474 (1998).  Plaintiff

12  must prove this by a preponderance of the evidence.  See WPI 21.01, 21.02.

13      3.      It is the duty of every person using a public street to exercise ordinary care to avoid

14  placing others in danger and to exercise ordinary care to avoid a collision.  "Ordinary care" is the

15  care that a reasonable person would exercise under the same or similar circumstances.  Martini v.

16  State, 121 Wn. App. 150, 160 & n.23 (2004).  The care required in a given instance must be

17  commensurate with the risk of harm, or danger, to which others might be exposed by one's

18  conduct.  Berglund v. Spokane County, 4 Wn.2d 309, 315 (1940).

19      4.      RCW 46.61.205 provides as follows: "The driver of a vehicle about to enter or

20  cross a highway from a private road or driveway shall yield the right-of-way to all vehicles

21  lawfully approaching on said highway."

22      5.      Before entering the northbound lanes of Boone Street, Mr. Murray had a duty to

23  observe all traffic on Boone Street and yield the right of way to all traffic moving in either

24

1   direction.  See Petersavage v. Bock, 72 Wn.2d 1, 4-5 (1967).  Mr. Murray was obliged to see and

2   appreciate the presence of all vehicles going in either direction and to allow them a fair margin of

3   safety.  Id. at 5.

4        6.      The 7-Eleven video camera footage, as well as the testimony of eyewitness

5   Frederick Austin Doe and accident reconstruction analysis of Mark Erickson, P.E., establishes that

6   Mr. Johnson was well into his left turn onto Boone Street when the postal vehicle suddenly pulled

7   out into his path of travel, in violation of RCW 46.61.205 and the common law duty of reasonable

8   care.

9        7.      The Court concludes that Plaintiffs have proved by a preponderance of the

10   evidence that the Postal Service driver, Michael Murray, failed to yield the right of way to

11   Plaintiff John Johnson and was therefore negligent.

12   **E.      Proximate Cause**

13        1.      The Court concludes Plaintiffs have proved by a preponderance of the evidence

14   that the negligence of the Postal Service driver, Michael Murray, was a proximate cause of the

15   collision.

16        2.      The Court concludes that Plaintiffs established by a preponderance that the

17   medical expenses, property damage to Plaintiff's motorcycle, wage loss, pain and suffering,

18   disability, disfigurement, and loss of enjoyment of life that Mr. Johnson identified were

19   proximately caused by the collision.

20        3.      The Court concludes that Plaintiffs established by a preponderance of the

21   evidence that the negligence of the Postal Service driver, Michael Murray, was a proximate

22   cause of loss of consortium damages to Plaintiff Jennifer Johnson.

23

24

**F.      Economic Damages**

1.      Plaintiff John Johnson may recover for the damage to his motorcycle proximately caused by the collision.  If the property is a total loss, as is Plaintiff's motorcycle, then the measure of damages is the fair market value of the property destroyed or damaged.  <u>McCurdy v. Union Pac. R. Co.</u>, 68 Wn.2d 457, 467, 469, 413 P.2d 617 (1966).

2.      The Court concludes that Mr. Johnson's motorcycle is a total loss as a result of damage proximately caused by the collision.  Mr. Johnson purchased the motorcycle new in 2017 for $9,883.99.  Plaintiff financed the purchase of the motorcycle and is still making payments on the loan.  The Court concludes that $9,883.99 is the appropriate recoverable amount for the total loss of Plaintiff's motorcycle.

2.      Plaintiff John Johnson may also recover the cost of reasonable and necessary medical expenses proximately caused by the collision.  <u>See</u> WPI 30.07.01.  The reasonableness and necessity of Plaintiff's medical expenses was admitted by the Defendant in the amount of $38,073.

3.      Plaintiff John Johnson may also recover for the reasonable value of lost earnings proximately caused by the collision.  <u>See</u> WPI 30.08.01.  Mr. Johnson was working two part-time jobs at the time of the collision.  The Court concludes that Mr. Johnson's wage loss proximately caused by the collision is $9,605.

**G.      Noneconomic Damages**

1.      Noneconomic damages include physical pain and mental suffering, disability, disfigurement, and loss of enjoyment of life, past and future.  <u>See</u> WPI 30.05, 30.06.

2.      Noneconomic damages are within the fact finder's discretion, though "there must be evidence upon which the award is based." <u>Bunch v. King Cty. Dep't of Youth Servs.</u>, 155 Wn.2d 165, 180 (2005).

3.      Mr. Johnson suffered a permanent injury to his right hand as a result of the collision.  Mr. Johnson is 43 years old.  His life expectancy is approximately 35 years according to the Washington State Insurance Commissioner's Life Expectancy Table.

4.      The Court concludes that John Johnson is entitled to $500,000.00 in noneconomic damages.

5.      The Court concludes that Jennifer Johnson is entitled to $30,000.00 in noneconomic damages for her loss of consortium claim.

## III.     ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, the Court enters the following Order:

Plaintiff Johnanas Johnson is entitled to a judgment against Defendant as follows:

1.      Property damage                                              $9,883.99

2.      Medical expenses                                           $38,073.00

3.      Wage loss                                                       $9,605.00

4.      Past and Future Noneconomic Damages to John Johnson    $500,000.00

Plaintiff Jennifer Johnson is entitled to a judgment against Defendant of $30,000.00 for loss of consortium.

The clerk is ordered to provide copies of this order to all counsel.

1    Dated December 19, 2021.

2

3                                         Marsha J. Pechman
                                          United States Senior District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 16