UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Johnanas Johnson; Jennifer Johnson, | CASE NO. C20-5581 MJP |
| Plaintiff, | ORDER GRANTING IN PART MOTION TO AMEND OR ALTER FINDINGS AND CONCLUSIONS |
| v. | |
| United States, | |
| Defendant. | |

This matter is before the Court on Defendant's motion to amend or alter the Court's

findings and conclusions after trial.  (Dkt. No. 59.)  Having considered the motion, Plaintiffs'

response, (Dkt. No. 60), and the reply, (Dkt. No. 65), the Court GRANTS the motion IN PART,

as set forth below.  The Court will file amended findings and conclusions in due course.

**Background**

This case arises out of a collision between Plaintiff John Johnson's motorcycle and a

United States Postal Service truck in Aberdeen, Washington.  Mr. Johnson and his wife, Jennifer

Johnson, sued the United States under the Federal Tort Claims Act (FTCA).  After a three-day

trial, the Court concluded that the USPS truck driver acted negligently by failing to yield the

1   right of way to Mr. Johnson, causing physical and emotional injuries to Mr. Johnson and loss of

2   consortium to Ms. Johnson.  (Dkt. No. 52 at 12–15.)  The Court awarded $9,883.99 for property

3   damage to Mr. Johnson's motorcycle; $38,073 for medical expenses; $9,605 for wage loss;

4   $500,000 for past and future noneconomic damages to Mr. Johnson; and $30,000 to Ms. Johnson

5   for loss of consortium.  (Id. at 15.)

6        The United States moves to alter or amend the judgment under Rule 52(b).  The United

7   States argues the findings of fact and conclusions of law are deficient because they adopted

8   portions of Plaintiffs' proposed findings and conclusions verbatim.  Plaintiffs oppose the motion

9   and respond that the findings and conclusions are more than sufficient for appellate review.  The

10   Court finds it appropriate to amend the findings and conclusions regarding the weight it afforded

11   expert witness testimony and Defendant's affirmative defense of mitigation of damages.  The

12   Court denies Defendant's motion in all other respects.

13                                      **Discussion**

14   **A.**       **Standard for Sufficiency of Factual Findings**

15        Under Rule 52, the trial court "must find the facts specially and state its conclusions of

16   law separately."  Fed. R. Civ. P. Rule 52(a).  Factual findings are reviewed for clear error.  Id. at

17   Rule 52(a)(6).  On a party's motion, the Court has discretion to amend its findings or make

18   additional ones and to amend the judgment accordingly.  Id. at Rule 52(b).

19        A trial court's findings must "be explicit enough to give the appellate court a clear

20   understanding of the basis of the trial court's decision, and to enable it to determine the ground

21   on which the trial court reached its decision."  Colchester v. Lazaro, 16 F.4th 712, 727 (9th Cir.

22   2021).  As the Ninth Circuit has recently explained:

23          Rule 52(a) does not require the district court to base its findings on each and
             every fact presented at trial.  But failure to make factual findings where a full

24

1
2
     understanding of the issues cannot be reached without the aid of findings precludes our review of the district court's legal conclusions and requires us to vacate and remand the district court's judgment.

3 Id. (cleaned up).  See also 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and

4 Procedure § 2579 (3d ed.) (Apr. 2021 update) ("The ultimate test of the adequacy of a trial

5 judge's findings is whether they are sufficiently comprehensive and pertinent to the issues to

6 provide a basis for decision.").

7      **B.**     **Defendant's Objections to the Factual Findings**

8      The United States objects that the Court's findings are too similar to those proposed by

9 Plaintiffs.  (Dkt. No. 65.)  While Defendant does not identify any clear error—such as findings

10 that were unsupported by the evidence at trial—it argues that the Court did not make specific

11 findings on its expert witnesses and its defense for failure to mitigate damages, and did not

12 adequately explain the calculation of lost wages in light of objections it had raised.

13      The Court acknowledges that " 'verbatim adoption of a prevailing party's proposed

14 findings . . . is generally disapproved.' "  Colchester, 16 F.4th at 728 (quoting Fed. Trade

15 Comm'n v. Enforma Natural Prod., Inc., 362 F.3d 1204, 1215 (9th Cir. 2004)).  But verbatim

16 adoption of a party's proposed findings does not itself amount to error.  In Colchester, the Ninth

17 Circuit found the trial court's findings did not provide an adequate factual basis for the court's

18 rejection of the respondent's affirmative defense.  Id.  In particular, the decision did not "resolve

19 the difficult questions of credibility, relevance, and weight" that were presented on that issue.  Id.

20 The Court noted that the respondent in that case had introduced credible allegations supporting

21 her main defense but the trial court denied her request for discovery to prove them and did not

22 explain why it ultimately rejected them at trial, making the proceeding "fundamentally unfair."

23 Id. at 716.

24

Findings meet the requirements of Rule 52 if they are supported by the record and sufficient to enable appellate review. "Verbatim adoption of a prevailing party's proposed findings is not automatically objectionable if the findings are supported by the record." Fed. Trade Comm'n, 362 F.3d at 1215. Defendant has not shown that any of the findings and conclusions here are unsupported by the trial record. Here, Plaintiffs proposed detailed findings of fact and the case they put on at trial for the most part established those findings. The Court altered and added to the proposed findings as it found appropriate to reflect the evidence at trial. Nevertheless, the Court agrees that some minor amendments are appropriate to the findings and conclusions and will file an amended order in due course.

              *1.*    *Expert testimony.*

Defendant objects that the Court did not make findings on the credibility of the four expert witnesses who testified about Mr. Johnson's right-knee and right-hand function. It is only necessary to make a finding on witness credibility if a legal conclusion turns on credibility. See King v. United States, 553 F.3d 1156, 1161–62 (8th Cir. 2009) (remanding for district court to make finding on credibility of witness testimony that was material to legal conclusion about direct evidence of age discrimination). The Court continues to believe the findings are specific enough for appellate review, and Defendant has not shown that the facts turned on witness credibility or that any of the findings are unsupported by the record. Nevertheless, the Court amends the conclusions to reflect that it afforded greater weight to the testimony of Plaintiffs' expert witnesses because they were in a better position to assess his physical injuries as his treating physicians.

2.      *Failure to mitigate damages.*

The United States raised the affirmative defense of mitigation with respect to John Johnson's physical injuries to his knee and fingers as well as his emotional distress and to Jennifer Johnson's loss of consortium claim.  To prove Plaintiffs failed to mitigate their damages, the United States would have had to show that they failed to exercise ordinary care to obtain treatment by a preponderance of the evidence.  6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 33.02 (7th ed., July 2019 update).  In assessing this claim, the Court may consider the nature of the treatment, the probability of success of such treatment, the risk involved in such treatment, and all of the surrounding circumstances.  Id.

The defense of mitigation should not be submitted to the fact finder "if the evidence shows that a proposed treatment might not be successful or if there is conflicting testimony as to the probability of a cure, because it is not unreasonable for a plaintiff to refuse treatment that offers only a possibility of relief."  Cox v. Keg Restaurants U.S., Inc., 86 Wn. App. 239, 244 (1997).  "Expert testimony is required in cases where a determination of causation turns on obscure medical factors."  Id.  That testimony must establish, to a reasonable degree of medical certainty, that specific treatment would improve the plaintiff's condition.  If it only shows the treatment might or could be beneficial, it is insufficient to establish a mitigation defense.  Fox v. Evans, 127 Wn. App. 300, 205–06 (2005).  And it is the defendant's burden to show there were alternative treatment options available that the plaintiff unreasonably rejected or failed to pursue and that that decision more likely than not adversely affected recovery.  Helmbreck v. McPhee, 15 Wn. App.2d 41, 58–59 (2020) (citing Fox v. Evans).

1    Defendant could have put on evidence to support its affirmative defense of failure to

2    mitigate but did not.  For this reason, the Court will amend its conclusions to note this failure of

3    proof.

4                                    a.    Mr. Johnson's knee injury.

5    Defendant did not make out its prima facie case on mitigation with respect to Mr.

6    Johnson's knee injury.  It is undisputed that Mr. Johnson sought treatment for his knee injury,

7    including physical therapy.  Defendants' expert witness, Dr. James Pritchett, testified as to the

8    course of treatment he reviewed in Mr. Johnson's medical records.  (See Dkt. No. 62, Trial Tr.

9    vol. 1, 104:18–105:9.)  The Court found Mr. Johnson's symptoms improved after a

10   corticosteroid injection in April 2019.  (Dkt. No. 52 at 7, ¶ 11.)  The Court did not award

11   damages for long-term or permanent damage to his knee.  There is no evidence Mr. Johnson

12   unreasonably refused treatment that would have mitigated his damages.

13                                   b.    Mr. Johnson's finger injuries.

14   Defendant also did not make out its prima facie case on mitigation with respect to Mr.

15   Johnson's finger injuries.  Defendant's expert witness on the issue, Dr. Rajiv Goel, testified that

16   the test Mr. Johnson's physical therapist used to measure grip and pinch strength was of "limited

17   value" and that he would not recommend it in his practice.  (Dkt. No. 63, Trial Tr. vol. 3, 428:9–

18   23.)  He also testified about Mr. Johnson's apparent abilities based on watching Mr. Johnson's

19   YouTube videos and the possibility of additional treatment and that he did not observe

20   significant limitations.  (Id. at 450:21–451:18.)  However, he did observe a "total hand

21   impairment of 12 percent."  (Id. at 452:4–17.)  He also observed a 20 percent impairment of the

22   middle finger, which he said correlates to a 4 percent impairment of the hand and a 2 percent

23   impairment of the upper extremity.  (Id. at 453:4–10.)  He admitted that the measurements by

24

1  Mr. Johnson's treating physician, Dr. Greg May, and physical therapist, Jarod Mann, indicated

2  decreased range of motion in the two injured fingers, and that the decreased range of motion was

3  caused by the accident.  (Id. at 456:17–457:3.)

4        But Defendant did not show Mr. Johnson refused additional treatment that was likely to

5  improve his conditions.  For example, Dr. Goel testified that he would not recommend any

6  additional treatment to improve loss of functional range of motion, even though he admitted Mr.

7  Johnson "might lose 5 to 10 degrees on extension or flexion."  (Id. at 443:9–19.)  With respect to

8  loss of grip and pinch strength, he testified that he did not have a strong opinion on the issue in

9  part because it is difficult to objectively measure.  (Id. at 443:20–445:4.)  He did not testify that

10 he would recommend additional treatment.  In contrast, Mr. Johnson convincingly testified as to

11 the continuing limitations he experiences and how they affect his livelihood and enjoyment of

12 life.  Dr. Goel did suggest some of Mr. Johnson's symptoms—in particular, numbness or loss of

13 feeling—could be explained by carpel tunnel syndrome, but that he could not determine the

14 cause on a "more-probably-than-not basis."  (Id. at 445:5–446:8.)  Finally, Dr. Goel testified that

15 the decreased range of motion in his fingers and right hand is a permanent condition that is "not

16 likely to substantially change in the future."  (Id. at 457:4–7.)  Given this testimony, Defendant

17 has also not shown that Mr. Johnson unreasonably refused further treatment for his finger

18 injuries.

19                    c.       Other noneconomic damages.

20        Defendant also did not make out its prima facie case on mitigation for other noneconomic

21 damages.  Defendant claims Mr. Johnson did not seek any mental-health treatment, and that such

22 a refusal to do so impaired his emotional recovery.  But Defendant did not put on an evidence—

23 such as from an expert witness—to establish that such treatment would have improved his

24

1    condition.  See Helmbreck v. McPhee, 15 Wn. App.2d 41, 58–59 (2020).  As a result,

2    Defendant's argument is based on speculation and it has not made out a prima facie case.

3                    d.        Mrs. Johnson's loss of consortium claim.

4            The Court awarded Mrs. Johnson $30,000 for loss of consortium.  Plaintiffs asked for

5    $30,000, primarily for the three-month period immediately after the accident but also taking into

6    account the long-term consequences of the collision on Mr. Johnson and the affect that would

7    have on their relationship.  The Court found she took on additional responsibilities for the three

8    months immediately after the accident and has endured a diminished spousal relationship.  (Dkt.

9    No. 52 at 10–11.)  Defendant also failed to make out a prima facie case on its defense for failure

10   to mitigate because it never put on evidence showing therapy would have mitigated damages.

11   See Helmbreck, 15 Wn. App.2d at 58–59.

12                   3.        Calculation of lost wages.

13           To calculate an award of economic damages under the FTCA, there are three steps the

14   Court takes: "(1) compute the value of the plaintiff's loss according to state law; (2) deduct

15   federal and state taxes from the portion for lost earnings; and (3) discount the total award to

16   present value."  Shaw v. United States, 741 F.2d 1202, 1205 (9th Cir. 1984).  The reason for

17   steps (2) and (3) is because the United States cannot be subject to punitive damages under the

18   FTCA.  Id. at 1206.  For step (2), if the United States does not receive the income tax it would

19   have received had the plaintiff been paid the wages and also must pay the amount of that tax as a

20   damages award, it would be doubly penalized and the award is considered punitive.  Id.

21   However, step (3) applies only to calculating future economic damages, so it does not apply to an

22   award for past lost wages.

23

24

1        Defendant argues the findings and conclusions do not explain the Court's award of

2 $9,605 for lost wages and why it should not be reduced to present value.  After trial, the

3 Assistant U.S. Attorney argued that the wages should be reduced for the amount in taxes Plaintiff

4 would have paid.  However, he conceded the point that determining an exact number for such a

5 modest award was impractical.  (See Dkt. No. 63 at 491:14–495:6.)

6        As Plaintiffs point out, there was no evidence on how much should be reduced for taxes.

7 The award is so small that taxes would depend on other household income and applicable

8 deductions for that year.  Shaw emphasizes the importance of this issue for larger awards.  741

9 F.2d at 1207 ("Where the award is large, the possible adjustments involved in taking taxes into

10 account are significant.").  Defendant has not shown that the award is in fact punitive or that

11 accounting for taxes would make any significant difference in the award amount.  Because

12 Defendant conceded that it would be impractical to make a detailed finding on this minor issue,

13 the Court concludes it is not necessary or appropriate to amend the findings or conclusions on

14 this point.

15        The motion to amend or alter is GRANTED IN PART, to the extent set forth in this

16 Order.  The remainder is DENIED.  The Court will file amended findings and conclusions in due

17 course.  The clerk is ordered to provide copies of this order to all counsel.

18        Dated March 1, 2022.

19

20                  Marsha J. Pechman
                    United States Senior District Judge

21

22

23

24